DECISION
Relator, Mt. Carmel, has filed an original action requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting permanent total disability ("PTD") compensation to respondent Prudenza Persichetti ("claimant") and to order the commission to either deny claimant's application for PTD compensation or, in the alternative, issue a new order granting or denying the requested compensation after clarifying claimant's work capacities and the vocational evidence relied upon for its conclusions.
This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. On April 10, 2002, the magistrate issued a decision, which included findings of fact and conclusions of law, and recommended this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) Relator has filed three objections to the magistrate's decision.
Relator argues in its first objection that the commission abused its discretion when it granted PTD compensation based on the report of Barbara Black. Relator argues in its second objection the commission violated the reasoning found in State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587 and State ex rel. Beiber v. Metco Welding Co. (1996), 77 Ohio St.3d 1, when it relied upon the reports of Drs. John Cunningham and James Rutherford. Relator argues in its third objection that the matter should be remanded to the commission because the commission's order was unclear as to what medical and/or vocational evidence was relied upon.
A review of relator's brief shows the arguments relator raises have previously been presented to the magistrate. After reviewing relator's objections and the magistrate's decision, we agree with the magistrate's conclusion that relator "has not demonstrated that the commission abused its discretion by granting claimant's application for PTD compensation."
After an examination of the magistrate's decision, an independent review of the stipulated evidence, and due consideration of relator's objections, this court overrules relator's objections and adopts the findings of fact and conclusions of law contained in the magistrate's decision. Since the magistrate sufficiently discussed and determined the issues raised by relator in its objections, further discussion is not warranted. Accordingly, relator's request for a writ of mandamus is denied.
Objections overruled; writ denied.
KLATT and BOWMAN, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Mt. Carmel, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent Prudenza Persichetti ("claimant"), and ordering the commission to deny claimant's request for PTD compensation. In the alternative, relator asks that the commission be ordered to issue a new order, either granting or denying the requested compensation, after clarifying claimant's work capacities and the vocational evidence relied upon for its conclusions.
Findings of Fact:
1. Claimant has sustained two work-related injuries in the course of and arising out of her employment. The first injury occurred on May 14, 1998, and has been allowed for "sprain lumbar region." Claimant was able to return to work following the 1998 injury. Claimant suffered a second work-related injury on October 13, 1999, and her claim was allowed for "low back strain." Claimant missed several months of work following the second injury but eventually returned to work with relator based on restrictions placed upon her by her treating physician, Jane L. Emerick, M.D.
2. After returning to work for a few days, claimant complained of severe back pain and has not worked since.
3. On September 14, 2000, claimant filed an application for PTD compensation. Her application indicates that she was fifty-eight years old when she sustained her second injury, that she had completed the seventh grade in Italy, that she can read and write, although not well, and can do basic math, and that her prior work history consists of work as an assembler, seamstress, cook, bakery sales person, and housekeeper.
4. Claimant's application was supported by the January 26, 2000 report of W. Scott Bolz, M.D., who concluded as follows:
 While this lady is symptomatically much improved and does not desire definitive surgical intervention, it is still inadvisable to return to a job that requires any kind of heavy lifting or frequent bending or stooping. I do believe she has a physical capacity to allow her to do sedentary or semi-sedentary work.
5. Claimant also submitted the August 11, 2000 report of her treating physician, Dr. Emerick, who concluded as follows:
 Prudenza Persichetti was reinjured and has persistent sciatic pain in her back with radiation to leg which has disabled the patient. She has reached maximum medical improvement based on multiple exams. She is unemployable at her job or any other job due to inability to lift anything over five pounds, sit for more than 30-45 minutes at one sitting because of continued pain.
6. On December 21, 2000, claimant was examined by commission specialist James Rutherford, M.D. In his January 2, 2001 report, Dr. Rutherford concluded that claimant had reached maximum medical improvement ("MMI") for the allowed conditions, assessed a ten percent whole person impairment, concluded that she could not return to her former position of employment which involved heavy lifting, and noted that she was able drive for her own transportation and be away from home for eight hours a day doing sedentary work activities. Dr. Rutherford completed an occupational activity assessment wherein he indicated that claimant could sit for five to eight hours a day, stand and walk for zero to three hours a day; could lift, carry, push, pull or otherwise move up to ten pounds for zero to three hours; could occasionally climb stairs, crouch, stoop, bend, kneel, and lift at knee and floor level; could frequently reach overhead and at waist level; and was unrestricted in her ability to handle objects, but was precluded from climbing ladders.
7. Claimant was also examined by John W. Cunningham, M.D., who issued a report dated November 17, 2000. Dr. Cunningham concluded that claimant had reached MMI, assessed an eight percent whole person impairment, noted that she could not return to her former position of employment without significant restrictions but that she was employable in sedentary and light work with limited bending at the waist, provided there was no crouching, stooping, bending or kneeling. Dr. Cunningham completed an occupational activity assessment wherein he indicated that relator was unrestricted in her ability to sit, lift, carry, push, pull or otherwise move up to twenty pounds, handle objects, reach overhead at waist and knee level; could walk for three to five hours and stand for zero to three hours; frequently use foot controls; could occasionally climb stairs and reach at floor level, but was precluded from climbing ladders, crouching, stooping, bending and kneeling.
8. An employability assessment was prepared by Barbara E. Burk, CRC, LPC, dated February 20, 2001. Based upon the report of Dr. Rutherford, Ms. Burk concluded that claimant could immediately perform the following jobs: "Surveillance System Monitor; Assembler." Following appropriate academic remediation or brief skill training, Ms. Burk opined that claimant could perform the following additional jobs: "Information Clerk; Animal Hospital Clerk; Telephone Solicitor; Referral and Information Aide; Typist." Based upon the report of Dr. Cunningham, Ms. Burk opined that claimant could immediately perform the following jobs: "Surveillance System Monitor; Security Guard; Gate Guard; Assembler." Following appropriate academic remediation or brief skill training, claimant could perform the same additional jobs listed previously based upon Dr. Rutherford's report. Based upon the report of Dr. Emerick, Ms. Burk concluded that claimant was unemployable. Ms. Burk concluded that claimant's age of sixty years classified her as a person who is closely approaching advanced age. Ms. Burk concluded that claimant's age was a significant employment barrier for the following reasons:
 * * * These individuals typically learn new, unfamiliar tasks more slowly than the average worker; and, therefore, they have difficulty competing. Typically, they need to have work which is the same or very similar to the work which they had successfully performed during the recent past. They need to work in the same or very similar work environments and use the same or very similar tools, machines, materials, work methods, and work processes. These individuals need transferable and highly marketable skills in order to overcome age barriers. * * *
Ms. Burk noted that claimant's education was limited, that individuals in this category typically perform unskilled and marginally semi-skilled work, and that they have difficulty performing many tasks found in semi-skilled and skilled work activities. Ms. Burk viewed claimant's academic achievement level as a barrier to employment. With regard to her work history, Ms. Burk noted that claimant's prior work was either unskilled or marginally semi-skilled, bordering on unskilled work activity. Further, Ms. Burk concluded that her employment history indicated that she had not developed any highly marketable, transferable skills to assist her in overcoming barriers to employment. Ms. Burke concluded as follows:
 It is highly improbable that an individual who is closely approaching advanced age, has a limited education and the work history that this claimant presents would be successful in developing academic or other skills that would result in a return to entry level sedentary or light jobs.
9. Claimant's application was heard before a staff hearing officer ("SHO") on May 31, 2001, and resulted in an order granting her compensation. The SHO noted that the reports of Drs. Rutherford and Cunningham were remarkably similar. The commission accepted both doctors' conclusions and then went on to determine how claimant's disability factors affected her ability to perform some sustained remunerative employment. In so doing, the commission identified the vocational report prepared by Ms. Burk and noted that she indicated that claimant could perform certain jobs within the restrictions given by both Drs. Rutherford and Cunningham. However, although the commission noted that Ms. Burk identified certain jobs which she believed claimant could physically perform, the commission noted her assessment of the nonmedical disability factors, agreed with her, and concluded that, based upon the nonmedical disability factors, claimant could not perform any sustained remunerative employment. Specifically, the commission noted as follows:
 Ms. Burk's assessment of the claimant's ability to "meet the demands of entry level occupations" was found to be "highly improbable." Regarding has [sic] age of 60 (which is classified as a person who is closely approaching "advanced age") Ms. Burk stated:
 These individuals typically learn new, unfamiliar tasks more slowly than the average worker; and, therefore, they have difficulty competing. These individuals need transferable and highly marketable skills in order to overcome age barriers. Her age is considered to present a significant employment barrier.
 Ms. Burk classified the claimant's education as "limited" and opined that it is a "barrier to employment."
 Regarding the claimant's work history, Ms. Burk stated that she "has not developed any highly marketable, transferable skills that will assist her in overcoming barriers to employment." Finally, Ms. Burk stated that since the claimant had not worked since 04/10/2000[.]
 Employers frequently question whether workers who have been out of the labor market for prolonged periods of time have developed daily habits that are not compatible with productive work activity.
 Additionally, injured workers who have been removed from work activity for extended periods of time often develop fears that they will be unable to meet employer's expectations or that returning to work will aggravate their injuries or cause new injuries. These are difficult barriers to overcome.
 Ms. Burk concluded that it "is highly improbable that an individual who is closely approaching advanced age, has a limited education and the work history that this claimant presents would be successful in developing academic or other skills that would result in a return to entry level sedentary or light [duty] jobs.
 It is found that although the claimant may be able to perform the sedentary and light duty positions indicated by the physical restrictions offered by Drs. Rutherford and Cunningham, her age, limited education, and lack of marketable and/or transferable skills, effectively prevent her from performing any sustained remunerative employment.
10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
Relator challenges the commission's order in three respects: (1) the commission failed to identify the physical capabilities which it found claimant to possess when it listed the reports of both Drs. Rutherford and Cunningham without specifically relying on either; (2) there is no evidence that claimant is unemployable within her physical restrictions; and (3) the commission failed to require a claimant to show her inability to obtain work consistent within her physical capabilities. For the reasons that follow, this magistrate finds that relator's arguments lack merit.
In the present case, the commission specifically noted that both Drs. Rutherford and Cunningham noted similar objective findings and gave a percentage of permanent impairment which was similar. The commission specifically accepted both doctors' conclusions. As such, the commission concluded that claimant could perform sedentary and some light duty work. Relator contends that this is an abuse of discretion and cites State ex rel. Corona v. Indus. Comm. (1998), 81 Ohio St.3d 587, and argues that the commission has failed to indicate the residual medical capacities that it believes claimant possesses. In Corona, the court noted that the commission had specifically accepted two medical conclusions: that claimant was limited to light work and that claimant could lift up to fifty pounds. Having found these findings to be inconsistent, the court ordered that the commission clarify its position because of the claimant's nonmedical profile. In Corona, the claimant had a limited education and a work history of physical labor. The court noted: "If claimant can do all but the heaviest work, then his background may be a minimal impediment to a return to work. If claimant is limited to light work, however, then his background might preclude employment." Id. at 589. However, in the present case, there is no inconsistency in the determination of claimant's residual medical capacity. The commission noted that the objective findings, percentage of impairment, and physical restrictions of Drs. Rutherford and Cunningham were remarkably similar even though Dr. Cunningham concluded that claimant could perform some light work while Dr. Rutherford found claimant capable of only sedentary work. The commission relied on both. Unlike the claimant in Corona, the claimant in the present case is physically capable of performing a very limited range of physical activity within the restrictions of both doctors. In fact, several of the jobs listed by Ms. Burk and her vocational assessment can be done given the restrictions placed on claimant by both doctors. As such, the concerns the court had in Corona are not present in this case.
Relator also cites State ex rel. Beiber v. Metco Welding Co. (1996),77 Ohio St.3d 1, for the same proposition that the commission must clarify the type of work it finds the claimant medically capable of performing. In Beiber, the court noted that the commission's order could be read as accepting or rejecting Dr. Holbrook's report and as accepting or rejecting Dr. Fallon's report. However, in the present case, there is no doubt that the commission accepted the findings of both doctors. As such, the commission concluded that the claimant could perform sedentary and some light duty work. This case does not present the same type of confusion that the court noted in Beiber. Further, nothing prohibits the commission from relying on the reports of two doctors who reached only slightly different conclusions. As such, relator's first argument is not well-taken.
Relator also contends there was no evidence in the file to establish that claimant was unemployable within her physical restrictions. Specifically, relator notes that the commission relied on Ms. Burk's vocational report to some extent but failed to adopt her conclusions with regard to what jobs claimant could perform. Relator contends that this constitutes an abuse of discretion. This magistrate disagrees.
It is undisputed that the commission has the discretion to accept one vocational report while rejecting another. See State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. Further, the commission can reject all the vocational reports and conduct its own analysis of the nonmedical factors. Contrary to relator's assertions, the commission is not precluded from agreeing with the analysis of a vocational expert while disagreeing with that expert's opinion as to what jobs a claimant can perform.
In the present case, the commission found that claimant's age, her education, and her prior work experience were all three negative factors working against her ability to become reemployed. Given those negative factors, and given her physical limitations, the commission concluded that claimant could not perform any sustained remunerative employment. Because the commission cited the evidence it relied upon and provided an explanation, the commission did not abuse its discretion in the present case. As such, this argument of relator is not well-taken as well.
Lastly, relator contends that the commission failed to require claimant to show that she was unable to obtain work consistent within her physical capabilities. Relator argues that, since the Ohio Supreme Court has found that it is an abuse of discretion for the commission to deny PTD compensation where the vocational evidence shows that the claimant is not capable of obtaining work and there is no evidence that the claimant is actually capable of obtaining work, State ex rel. Hopkins v. Indus. Comm. (1994), 70 Ohio St.3d 36, relator maintains that it must also be an abuse of discretion for the commission to grant PTD compensation to a claimant when all the vocational evidence identifies jobs which the claimant can perform. This magistrate disagrees.
As stated previously, the commission is the exclusive evaluator of the evidence and the commission's responsibility includes conducting an analysis of the nonmedical factors. It should be remembered that, in her report, Ms. Burk specifically stated that claimant's age, education, and work history were negative factors that would be barriers to her reemployment. Even so, Ms. Burk did identify certain jobs which she believed claimant could perform. However, the commission was not required to accept her conclusion that claimant could perform these jobs. Instead, the commission specifically found that although claimant may be able to physically perform the sedentary and light duty positions identified by Ms. Burk within the physical restrictions offered by Drs. Rutherford and Cunningham, claimant's age, limited education, and her lack of marketable and/or transferable skills, effectively prevent her from performing any sustained remunerative employment. As such, the commission noted that claimant was physically capable of performing certain jobs but that, after considering the nonmedical disability factors, she would not be capable of performing those jobs. The commission identified the evidence it relied upon and provided the requisite analysis and this argument of relator is not well-taken as well.
Relator also contends that the commission abused its discretion by issuing an order which failed to identify the evidence relied upon in violation of Noll. This magistrate disagrees. The commission relied on Drs. Rutherford and Cunningham for its conclusion that claimant was capable of physically performing sedentary to light duty work. The commission, in conducting its own independent analysis of the nonmedical factors, agreed with Ms. Burk's analysis. The commission's failure to use the words "relied upon" is not fatal to its order.
Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion by granting claimant's application for PTD compensation and relator's request for a writ of mandamus should be denied.